UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARY HALL-DINGLE,

                Plaintiff,

    v.

GEODIS WILSON USA, INC.; LISA
MASCARO; and JOHN DOES  1-10
(fictitious names of entities and/or individuals
whose identities are presently unknown,
individually, jointly, severally and/or in the
alternative,

                Defendants.

Civil Action No. 2:15-cv-01868 (SRC)(CLW)

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

David I. Rosen, Esq.
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
*Attorneys for defendant
Geodis Wilson USA, Inc.*

Of Counsel:
David I. Rosen, Esq.

On the Brief:
David I. Rosen, Esq.
Grace A. Byrd, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 3

    I.     Ms. Hall-Dingle's Employment History at Geodis ............................... 3

          A.     Background Regarding Geodis .................................................. 3

          B.     Overview of Plaintiff's Employment History ........................... 3

          C.     The Company's Relevant Leave Policies .................................. 4

          D.     Plaintiff's First, FMLA-Covered Leave of Absence ................ 5

          E.     Plaintiff's Second Leave, Granted as a Reasonable Accommodation ........................................................................ 7

          F.     Plaintiff's Third, Unapproved Leave of Absence ..................... 7

          G.     Plaintiff's Failure to Return a Medical Certificate to Substantiate Her NJ FLA Leave Eligibility ................................................... 9

    II.    Procedural History ............................................................................. 14

          A.     Pleadings .................................................................................. 14

          B.     Discovery is Complete ............................................................. 14

          C.     The Court Dismissed Counts 4 and 5 and All Claims Against Ms. Mascaro .................................................................................... 15

ARGUMENT ................................................................................................... 15

    I.     Applicable Legal Standards ................................................................ 15

          A.     Grounds for Granting Summary Judgment .............................. 15

          B.     Burden Shifting Framework ..................................................... 16

    II.    Summary Judgment Must Be Granted on Plaintiff's FMLA Retaliation Claim Because Plaintiff Has Provided No Evidence to Support Her Claim that She Was Denied Reinstatement or Wrongfully Terminated for Taking FMLA Leave ........................................................................................ 17

          A.     Plaintiff Cannot Meet Her Prima Facie Burden on her FMLA Claim Because Her Termination, Which Arose Approximately Three Months After She Exhausted her FMLA Leave and Was Based on Her Failure to Provide a Medical Certification Pursuant to a Separate, Unrelated Statutory Leave, Was Not Causally Related to Her Exercise of FMLA Rights.................................... 17

          B.     Plaintiff Cannot Demonstrate that Geodis' Legitimate, Non-Discriminatory Reason for Terminating Her Employment Was a Pretext for Her Having Taken FMLA Leave ........................... 19

i

III.   Summary Judgment Must Be Granted on Plaintiff's NJ FLA Retaliation
       Claim Because Plaintiff Has Provided No Evidence to Support Her Claim
       that She Was Entitled to NJ FLA Leave or that She Was Wrongfully
       Terminated for Taking Leave Under the NJ FLA ................................................ 21

       A.   Plaintiff's NJ FLA Relation Claim Fails Because She Did Not
            Provide a Medical Certification Pursuant to her Employer's
            Request to Substantiate Her Entitlement to Leave. ................................. 21

       B.   Plaintiff's Claim Fails Because She Did Not Provide a Recognized
            Basis to Substantiate that She was Entitled to Leave. ............................ 23

       C.   Plaintiff Cannot Demonstrate that Geodis' Legitimate, Non-
            Discriminatory Reason for Terminating Plaintiff's Employment
            Was a Pretext. ......................................................................................... 26

IV.    Summary Judgment Must be Granted Dismissing Plaintiff's NJ FLA
       Interference Claim Because She Was Not Entitled To Leave Under that
       Statute and Because Her Claim is Duplicative of Her Retaliation Claim............ 27

       A.   Plaintiff's Interference Claim is Duplicative of Her Retaliation
            Claim......................................................................................................... 27

       B.   Plaintiff's Interference Claim Fails Because She Did Not Provide a
            Medical Certification or Otherwise Substantiate that She Was
            Entitled to Leave. ..................................................................................... 28

       C.   Plaintiff Cannot Demonstrate that Geodis' Legitimate, Non-
            Discriminatory Reason for Terminating Plaintiff's Employment
            Was a Pretext. ......................................................................................... 29

CONCLUSION.............................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)........................................................15

*Aubuchon v. Knauf Fiberglass, GMBH*,
359 F.3d 950 (7th Cir. 2004) ...................................................................................................24

*Beese v. Meridian Health Sys.*,
Civil Action No. 11-7505(FLW), 2014 U.S. Dist. LEXIS 96498 (D.N.J. July 16,
2014) .........................................................................................................................................26

*Best v. Hous. Auth.*,
61 F. Supp. 3d 465, 476 (D.N.J. 2014) ...................................................................................17

*Capilli v. Whitesell Constr. Co.*,
271 Fed. Appx. 261 (3d Cir. 2008)..........................................................................................16

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)........................................................15

*Colicchio v. Merck & Co.*,
Civil Action No. 080-3593, 2013 U.S. Dist. LEXIS 10029 (D.N.J. Jan. 25, 2013)...............16

*Dieng v. Computer Sci. Corp.*,
Civil Action No. 14-5381, 2016 U.S. Dist. LEXIS 29642 (D.N.J. Mar. 8, 2016)..................16

*Ekhato v. Rite Aid Corp.*,
529 Fed. Appx. 152 (3d Cir. 2013)..........................................................................................20

*Erdman v. Nationwide Ins. Co.*,
582 F.3d 500 (3d Cir. 2009).....................................................................................................16

*Estate of Smith v. Marasco*,
318 F.3d 497 (3d Cir. 2003).....................................................................................................18

*Farmer v. Camden City Bd. of Educ.*,
Civil Action No. 03-685, 2005 U.S. Dist. LEXIS 7339 (D.N.J. Mar. 28, 2005)....................26

*Fuentes v. Perskie*,
32 F.3d 759 (3d Cir. 1994)........................................................................................................17

*Gutierrez v. 78th Judicial Dist. Court*,
Civil Action No. 1:07-cv-1268, 2009 U.S. Dist. LEXIS 73377 (W.D. Mich. Aug. 18,
2009) .........................................................................................................................................24

iii

*Harcourt v Cincinnati Bell Tel. Co.*,
   383 F. Supp. 2d 944 (S.D. Ohio 2005) ................................................................21

*Hayduk v. City of Johnstown*,
   580 F. Supp. 2d 429 (W.D. Pa. 2008) ................................................................22

*Healy v. New York Life Ins. Co.*,
   860 F.2d 1209 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098, 109 S. Ct. 2449, 104 L.
   Ed. 2d 1004 (1989) ..........................................................................................16, 20

*Jalil v. Avdel Corp.*,
   873 F.2d 701 (3d Cir. 1989) ...............................................................................18

*Kumar v. Johnson & Johnson, Inc.*,
   Civ. Action No. 12-779, 2014 U.S. Dist. LEXIS 154650 (D.N.J. October 21, 2014)............27

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
   691 F.3d 294 (3d Cir. 2012)................................................................................26

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
   598 Fed. App'x. 109 (3d Cir. 2015) ................................................................26, 27

*Lipscomb v. Electronic Data Systems Corp.*,
   275 Fed. Appx. 144 (3d Cir. April 2008) ............................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ......................................15

*McCabe v. Ernst & Young, LLP*,
   494 F.3d 418 (3d Cir. 2007)................................................................................15

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).........................................16

*Moore v. U.S. Foodservice, Inc.*,
   Civ. No. 11-2460, 2013 U.S. Dist. LEXIS 140548 (D.N.J. Sept. 30, 2013) .........................28

*Parker v. Hahnemann Univ. Hosp.*,
   234 F. Supp. 2d 478 (D.N.J. 2002) .....................................................................16

*Rinehimer v. Cemcolift, Inc.*,
   292 F.3d 375 (3d Cir. 2002)................................................................................18

*Schoburg v. Dow Jones & Co.*,
   2014 U.S. Dist. LEXIS 28008 (D.N.J. Mar. 4, 2014)...........................................20

*Seeger v. Cincinnati Bell Tel. Co.*,
   681 F.3d 274 (6th Cir. 2012) ..............................................................................18

iv

*Shields v. Zuccarini*,
254 F.3d 476 (3d Cir. 2001)............................................................................16

*Thomas v. Town of Hammonton*,
351 F.3d 108 (3d Cir. 2003).............................................................................18

*Thorson v. Gemini, Inc.*,
205 F.3d 370 (8th Cir. 2000) ...........................................................................22

*Thurston v. Cherry Hill Triplex*,
941 F. Supp. 2d 520 (D.N.J. Aug. 5, 2008) .....................................................16

*Truesdell v. Source One Personnel Inc.*,
Civil Action No. 07-1926, 2009 U.S. Dist. LEXIS 48703 (D.N.J. June 9, 2009)..................16

*Wierman v. Casey's Gen. Stores*,
638 F.3d 984 (8th Cir. 2011) ...........................................................................18

*Woloszyn v. Cty. of Lawrence*,
396 F.3d 314 (3d Cir. 2005)..............................................................................15

*Yamamoto v. Panasonic Corp. of N. Am.*,
Civil Action No. 12-2352 JLL, 2013 U.S. Dist. LEXIS 93244 (D.N.J. July 2, 2013)
(Linares, J.) .....................................................................................................27

*Zawadowicz v. CVS Corp.*,
99 F. Supp. 2d 518 (D.N.J. 2000) ....................................................................22

STATE CASES

*Cluney v. Mon-Oc Fed. Credit Union*,
2006 N.J. Super............................................................................................28

*DePalma v. Building Inspectors Underwriters*,
350 N.J. Super. 195 (App. Div. 2002) .............................................................17

FEDERAL STATUTES

29 U.S.C. § 2613............................................................................................21

FMLA ................................................................................................... passim

STATE STATUTES

N.J.S.A. § 34:11B-1, *et seq.*............................................................................21

N.J.S.A. § 34:11B-4(e) ...................................................................................21

N.J.S.A. § 34:11B-4(e)(1)..................................................................21, 22, 24

**RULES**

F.R.C.P. 56..................................................................................................................15

**REGULATIONS**

29 C.F.R. §§ 825.313(b) ...........................................................................................22

## PRELIMINARY STATEMENT

Following the completion of fact discovery, Defendant Geodis Wilson USA, Inc. ("Geodis" or "Defendant") hereby moves for summary judgment dismissing, in its entirety, the Complaint filed by Plaintiff Mary Hall-Dingle ("Plaintiff" or "Dingle").

As it remains, Plaintiff's Complaint alleges three claims against Geodis related to the termination of her employment from the company: (1) a claim for retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), (2) a claim for retaliation in violation of the New Jersey Family Leave Act, N.J.S.A. § 34:11B-1, *et seq.* ("NJ FLA"), and (3) a claim for interference with Plaintiff's right to leave in violation of the NJ FLA. These claims have no merit as a matter of law for all of the following reasons:

1.     Geodis granted Plaintiff a full 12 weeks of FMLA leave in connection with her own serious health condition, even though she was not eligible for leave pursuant to the terms of that statute because she had worked for Geodis for less than a year. On the date Plaintiff was set to return to work, she sought an additional 4 weeks of uncovered leave, and Geodis approved her request.

Plaintiff admitted at her deposition that she had no reason to believe that Geodis would not have permitted her to return in August 2013, following her leave extension. As explained in detail below, Plaintiff was not terminated by Geodis until October 2013, three months after her FMLA leave ended and for reasons wholly unrelated to her taking FMLA leave. Further, she cannot demonstrate that she was terminated for pretextual reasons relating to her having taken FMLA leave, because she admits that she has no facts to support her claim that Geodis retaliated against her based on same.

2.      Plaintiff cannot establish that she was ever entitled to NJ FLA leave to care for her son, because she neither submitted to Geodis sufficient facts to substantiate her entitlement for leave nor submitted a completed medical certification, which should have included a certification by her son's physician regarding her son's condition and the need for her to care for him.

Plaintiff was given multiple chances to submit this information over the course of three months, and Geodis explicitly told her that she had to submit a completed medical certification before Geodis could authorize her leave to care for her son.  Geodis' final demand letter informed Plaintiff that her leave would be denied if she did not return the completed medical certification and that she would be terminated.  Nonetheless, she failed to provide the completed certification and admitted that she could not provide the required medical certification, including the portion to be filled out by her son's physician.

While as a mother she may have felt that she needed to be with her son to care for him, Plaintiff did not provide Geodis with sufficient information to substantiate her entitlement to leave, and therefore cannot meet her *prima facie* burden.  She also has not proffered any evidence that Geodis' legitimate reason for terminating her employment was a pretext.

3.      Plaintiff's NJ FLA interference claim is duplicative of her retaliation claim and should be dismissed because, like her retaliation claim, it is based on the assertion that Geodis interfered with her leave by failing to grant her leave and terminating her employment.

Even if the Court does not dismiss her claim as duplicative, it must be dismissed

2

for the same reasons why her NJ FLA retaliation claim must be dismissed.   In sum, Plaintiff cannot demonstrate that she provided Geodis with sufficient information in the form of the required medical certification to demonstrate that she was entitled to NJ FLA leave, and she cannot point to any evidence that Geodis' reason for terminating her employment was a pretext.   While she may have felt that her termination was unfair, her feelings are not sufficient to establish pretext.

Summary judgment should be granted to Defendant because there are no genuine issues of material fact to be tried and Defendant is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

**I.      Ms. Hall-Dingle's Employment History at Geodis.**

A.      Background Regarding Geodis.

Geodis is an air and sea freight management service provider, which delivers integrated logistics solutions for customers in several areas.   [*See generally id.*, Ex. 8, Geodis Wilson USA Employee Handbook (the "Employee Handbook"), p. 5/30].   Geodis has offices located throughout the United States, and its principal office is situated in Iselin, New Jersey.   [*Id.*].   Geodis' Human Resources ("HR") staff is located in the Iselin office.   [*Id.* at p. 6/30].   Employees are expected to direct personnel issues to Geodis' HR staff.   [*See generally id.*].

B.      Overview of Plaintiff's Employment History.

Plaintiff commenced her employment with Geodis on May 21, 2012, as an Import Agent. [*See* Certification David I. Rosen ("Rosen Cert."), Ex. 5, Plaintiff's Deposition Transcript ("Dingle Dep.") at 45:16-25; Ex. 6, Plaintiff's Offer Letter].   As an Import Agent, Plaintiff worked on detailed import and invoice processing tasks.   [*See generally id.*, Ex 7, Import Agent Job Description].   Plaintiff acknowledged at her deposition that her work was detail-oriented and

testified that in order to perform her job she had to read documentation carefully.  [*See id.*, Ex. 5, Dingle Dep. at 106:11-18].  She worked in the EWR Branch, located in Edison, New Jersey, until her employment with Geodis ended on October 16, 2013.  [*See id.* at 48:13-17; Ex 6, Plaintiff's Offer Letter; Ex 30, Termination Letter].

      C.    <u>The Company's Relevant Leave Policies.</u>

Geodis provides its employees with copies of its policies, including policies regarding leave taken pursuant to the FMLA and the NJ FLA.  [*See id.*, Ex. 31, Deposition of Geodis Corporate Representative ("Corp. Rep. Dep.") at 26:23-27:3].  Plaintiff admits that at the outset of her employment, she received a packet of on-boarding documents and policies, including a copy of the Employee Handbook[1].  [*See id.*, Ex. 5, Dingle Dep. at 48:18-20; *see also* Ex. 8].  Plaintiff acknowledged receipt of said handbook, which set forth a guideline of its policies and practices, including a policy regarding unpaid FMLA-covered leave.  [*See id.*, Ex. 8, p. 20/30; Ex. 9, Acknowledgment of Receipt of Employee Handbook].  Plaintiff also testified that she received an addendum to that handbook with New Jersey specific policies ("NJ Handbook Addendum") when she commenced employment at Geodis, which included Geodis' policies regarding leave taken pursuant to either the FMLA or the NJ FLA.  [*See id.* at 56:6-57:1; Ex. 10, NJ Handbook Addendum pp. 2/6-5/6].  The NJ Handbook Addendum includes the following excerpt in the section entitled "Required Certifications Support Leave Requests":

> "Whenever the Company requests employees to provide medical certifications, employees must provide the requested certifications *within 15 calendar days after the Company's request*, unless it is not practicable to do so despite an employee's diligent, good faith efforts. The Company shall inform employees if submitted medical certifications are incomplete or insufficient and provide employees at least seven calendar days to cure deficiencies. *The Company will deny leave to*

---

[1]  The Employee Handbook and Geodis' other policies and practices do not create an employment contract and merely set forth guidelines for the companies' policies and practices, as explained therein. [*See* Ex. 8 p. 2/30].

*employees who* fail to timely cure deficiencies or *otherwise fail to timely submit requested medical certifications.*

[*See id.,* Ex. 10, NJ Handbook Addendum pp. 3/6 (emphasis added)].   The NJ Handbook Addendum further specifies, among other things, that an employee may contact Geodis' HR team with any questions regarding the FMLA and NJ FLA policies. [*See id.*, Ex. 10 at p. 5/6; *see also* Ex. 31, Corp. Rep. Dep. at 28:11-18].

Plaintiff's acknowledgment of her receipt of policies from Geodis includes the following affirmations: "I have received, reviewed and understood the Geodis Wilson U.S.A., Inc., Employee Handbook and all complementary policies posted on FreightNet . . . . I acknowledge my responsibility to read the handbook to understand its contents and to follow and abide by its provisions with no reservations." [*See id.*, Ex. 9].  Plaintiff also had access to Geodis' policies through Geodis' intranet, "FreightNet," and could request additional copies of those policies, if needed, from HR at any time. [*See id.*, Ex. 8 at pp. 3/30, 20/30; Ex. 9].  Plaintiff accessed FreightNet during her employment at Geodis. [*See id.*, Ex. 5, Dingle Dep. at 53:5-22].

   D.    Plaintiff's First, FMLA-Covered Leave of Absence.

In late March/early April 2013, Plaintiff took several days off from work because she was sick, and eventually needed to take extended medical leave for her own illness.  [*See generally id.*, Ex. 5, Dingle Dep. at 60:21-61:2, 62:8-11].  Throughout April 2013, Plaintiff communicated with Geodis' HR Benefits Specialist, Lisa Mascaro ("Mascaro"), regarding her need for medical leave and the paperwork required to substantiate her leave.  [*See id.* at 61:2-62:11; Ex. 11, Deposition of Lisa Mascaro ("Mascaro Dep.") at 11:9-12; Exs. 12 - 13].  Ms. Mascaro sent Plaintiff a letter summarizing her right to medical leave pursuant to the FMLA and asked

Plaintiff to complete the enclosed U.S. DOL Certification of Health Care Provider form,[2] among other paperwork, in order to substantiate her need for leave. [*See id.*, Ex. 5, Dingle Dep. 66:19-68:18; Ex. 13]. In response, Plaintiff initially provided emergency room discharge paperwork, but stated that she would provide the necessary certification form once she saw her doctor on May 6, 2013. [*See id.*, Ex. 5, Dingle Dep. at 73:24-74:5; Ex. 14]. The discharge papers set forth, among other things, that Plaintiff's son was on a liquid diet, but did not set forth any other limitations, details regarding his injuries or the need for his mother to care for him. [*Id.*, Ex. 14]. Ms. Mascaro followed up with Plaintiff by letter, confirming that Geodis had not received the "FMLA paperwork" from Plaintiff's physician, and Plaintiff admitted that she understood that Ms. Mascaro was referring to the medical certification in her letter. [*See id.*, Ex. 5 Dingle Dep. 76:24-77:5; Ex. 15].

By fax dated May 6, 2013, the date Plaintiff next saw her doctor, Plaintiff returned the requested medical certification to Ms. Mascaro, including the physician's portion that Plaintiff testified was filled out and signed by her physician as requested by Geodis. [*See id.*, Ex. 5, Dingle Dep. at 79:6-14; Ex. 16]. Geodis accepted the certification to justify Plaintiff's absences and approved Plaintiff's FMLA leave for the period from April 5, 2013, through June 28, 2013. [*See id.*, Ex. 17; Ex. 11, Mascaro Dep. at 106:16-19].[3] Plaintiff testified that she understood the terms of Geodis' letter approving her leave. [*See id.*, Ex. 5, Dingle Dep. at 80:9-82:14].

---

[2]   Plaintiff acknowledged that the FMLA form that she received from Geodis contained the words "Certification of Health Care Provider" at the very top of the form. [*See id.*, Ex. 5, Dingle Dep. at 172:19-21; *see also* Ex. 16].

[3]   Plaintiff's leave was not covered under the NJ FLA because she took leave for her own serious health condition, and that statute does not provide leave under those circumstances. [*See generally* N.J.S.A. § 34:11B-1, *et seq.*] Also, Geodis approved Plaintiff's request for FMLA leave, even though she had been employed for less than one year and thus was statutorily ineligible for same. [*See id.* at 83:1-18, Ex. 6, and 29 U.S.C. §2611(s)(A)].

E.      Plaintiff's Second Leave, Granted as a Reasonable Accommodation.

On June 28, 2013, the day that her approved FMLA leave ended, Plaintiff sent an e-mail to Ms. Mascaro, explaining that she was still under her physician's care and could not return to work until August 5, 2013.  [*See id.*, Ex. 18].[4]  Geodis requested that Plaintiff provide a physician's note confirming that she needed to remain out from work.  [*See id.*, Ex. 5, Dingle Dep. at 91:10- 18; Ex. 18].  Plaintiff did so as requested.  [*See id.*, Ex. 5, Dingle Dep. at 95:7-16; Ex. 19].  Geodis granted Plaintiff's request to take an additional four weeks of leave through August 4, 2013, in order to reasonably accommodate her recovery, even though her FMLA protected leave period had ended.  [*See id.*, Ex. 5, Dingle Dep. at 112:5-10;123:2-5; Ex. 11, Mascaro Dep. at 112:5-10].

Plaintiff admitted that Geodis granted her a full 12 weeks of FMLA leave and a four week extension after her FMLA leave expired, and that she did not have any reason to believe that Geodis would not have allowed her to return to work on August 5, 2013.  [*Id.* at Ex. 5, Dingle Dep. at 122:17-20; 234:9-18; 236:19-24].  Plaintiff further testified that no one at Geodis ever told her she could not return to work on June 28, 2013, or later on August 5, 2013, after her extended leave ended, and that at least as of August 5, 2013, Geodis treated her fairly and granted her all the time off she requested.  [*See id.* at 122:21-123:1; 235:1-4; 236:25-237:6]. Plaintiff did not, however, return to work on August 5, 2013, as expected. [*See id.* at 165:17-23].

F.      Plaintiff's Third, Unapproved Leave of Absence.

On the day after her extended leave period ended, Plaintiff sent an e-mail to Ms. Mascaro and to her supervisor on August 5, 2013, stating that she would "not be returning to work today." [*See id.*, Ex. 20].  Plaintiff stated in her e-mail that her son was in a "deadly car accident" and she

---

[4]   Plaintiff testified at her deposition that she understood that her leave ended on June 28, 2013, but that she could not clearly recall whether she reached out to Geodis to request additional leave until the date that her FMLA leave ended.  [*See id.* at 84:16-86:15; 90:9-21].

did not "*feel* he is ready to be left alone at this time." [*See id.*, Ex. 5, Dingle Dep. at 134:11-136:11; 136:17-20; Ex. 20 (emphasis added)].[5]  She did not note how long she needed to care for her son [*id.*, Ex. 20; *see also* Ex. 11, Mascaro Dep. at 123:19-21], but stated that she would call the office to further discuss this.  [*Id.*].

Geodis permitted Plaintiff time to be with her son while he convalesced, and waited for Plaintiff to reconnect with Geodis as Plaintiff said she would in her e-mail.  [*See id.*, Ex. 11, Mascaro Dep. at 119:8-16; *see also* Ex. 20].   Plaintiff testified that she interpreted Geodis' decision to refrain from contacting her for the first few weeks while she cared for her son as "very inconsiderate" and she was "upset" that no one from Geodis called her.  [*See id.*, Ex. 5, Dingle Dep. at 172:25-173:8; 187:17-189:7].   Further, Plaintiff testified that by stating to Geodis that her son was "in a deadly car accident" and that she did not "feel that he is ready to be left alone" she had already provided "enough" information regarding the details of the accident.  [*Id.* at 174:3-20; 175:23].

Plaintiff did not communicate again with Human Resources until August 29, 2013, when she sent Ms. Mascaro an e-mail stating she would be able to return to work on September 9, 2013.  [*See id.*, Ex. 20].   Plaintiff explained at her deposition that the reason why the date September 9, 2013, was significant was because her son's doctor was removing the wires from his mouth on September 6, so she felt that if "he was able to speak and eat and get his strength back" after that event she would be back to work the following Monday.  [*See id.*, Ex. 5, Dingle Dep. at 142:2-13].   She admitted, however, that her son's physician did not tell her that she could not return to work until September 9, 2013; rather, she testified: "*I decided on my own* that when

---

[5]   Plaintiff testified that her son was in a car accident on July 28, 2013, and that during that week, before she contacted Geodis on August 5, 2013, she cared for her son; however, as far as Geodis knew, she was still on leave for her own medical reasons.  [*See id.*, Ex. 5, Dingle Dep. at 107:23:-108:1; 122:2-7].

he was able to speak to me and eat solid foods . . . , I would be able to return back to work without him needing my assistance." [*See id.* at 143:14-20 (emphasis added)].

Plaintiff further testified that although she had a large family, including at least three sisters who lived in New Jersey, did not work and who may have been able to assist to the extent her son, as she decided, needed assistance, that "[t]his was my responsibility and I needed to care for my son." [*See id.* at 143:21-144:12]. Plaintiff explained at her deposition: "I'm his mother and I *wanted* to take care of him." [*See id.* at 144:5-6 (emphasis added)]. She further explained that she determined that staying home to take care of her son is what she "should do" as a mother and that she felt that her son was "more comfortable" having her care for him. [*See id.* at 145:7-13; 232:4-16].

In her August 29, 2013, e-mail to Ms. Mascaro, Plaintiff did not provide any further details regarding the accident, her son's condition or the reasons why she needed to care for her son. [*See id.*, Ex. 5, Dingle Dep. at 176:13-178:12; Ex. 20]. She admitted at her deposition that she did not provide information regarding her son's condition, other than stating that his wires were being removed from his jaws on September 6, 2013. [*See id.*, Ex. 5, Dingle Dep. at 176:5-8].

G.    Plaintiff's Failure to Return a Medical Certificate to Substantiate Her NJ FLA Leave Eligibility.

On September 4, 2013, Ms. Mascaro sent Plaintiff a letter ("First Request Letter"), asking Plaintiff to return to Geodis a "medical certification" to substantiate her eligibility for leave, including information demonstrating that her son had a "serious health condition." [*See* Rosen Cert., Ex. 21]. Plaintiff admitted at her deposition that based on her reading of the First Request Letter, she saw the language requesting that she provide a medical certification, and she

understood that the term "serious health condition" pertained to language that appeared in both Geodis' FMLA and NJ FLA policies. [*See id.*, Ex. 5, Dingle Dep. at 170:10-171:5].

Rather than returning the medical certification or expressly confirming that she would be able to perform the "essential functions" of her job upon her return to work, Plaintiff, on September 6, 2013, sent Ms. Mascaro an e-mail asking once again if she could return to work on September 9, 2013.  [*See id.*, Ex. 5, Dingle Dep. at 184:16-19; 185:19-23; Ex. 22].   While Plaintiff admitted at her deposition that nothing in the First Request Letter noted that she was terminated  (*see id.,* Ex. 5, Dingle Dep. at 182:13-17), she continued to contact Geodis' HR Department and ask about her job status.  [*See id.*, Ex. 22].  Further, Plaintiff did not state in that e-mail that she did not understand any portion of the First Request Letter.[6]  [*See id.*].  Plaintiff further admitted that she did not provide any additional information about the car accident or her son's health condition in that e-mail.  [*See id.*, Ex. 5, Dingle Dep. at 183:23-184:7].  She testified that although the First Request Letter noted that she should "not hesitate to contact" Geodis' HR Department if she had any questions, she did not think to ask what Geodis meant by the term "medical certification."  [*See id.* at 189:7-17].

Because Ms. Mascaro was out of the office, Juan Egas ("Egas"), Geodis' HR Manager and Ms. Mascaro's direct supervisor, responded to Plaintiff's e-mail, asking her to "urgently" provide the information requested by Ms. Mascaro and asking her to "call me directly" with any questions.  [*See id.*, Ex. 23; Ex. 11, Mascaro Dep. at 13:4-8].  Plaintiff admitted at her deposition that she did not recall calling him.  [*See id.*, Ex. 5, Dingle Dep. at 186:20-22].  She further testified that she considered Mr. Egas' e-mail to be "inconsiderate."  [*See id.*, at 189:18-25].

---

[6]  It bears repeating that Plaintiff understood that she was required to and did submit a completed medical authorization in connection with her FMLA leave for her own serious illness (*See id.*, Ex. 11, Mascaro Dep. at 169:1-7). [*See id.*, Ex. 5, Dingle Dep. at 211:4-7].

On September 11, 2013, Ms. Mascaro sent Plaintiff a second letter asking Plaintiff to return a completed "medical certification" to substantiate her eligibility for leave to care for her son ("Second Request Letter") and to contact HR with any questions. [*See id.*, Ex. 24; *see also* Ex. 11, Mascaro Dep. at 148:6-9]. In response to Geodis' Second Request Letter, Plaintiff sent a fax to Geodis on September 19, 2013, with a cover sheet, advising Ms. Mascaro, "I don't have any medical reports, just the bills." [*See id.*, Ex. 25]. Plaintiff merely enclosed with her fax newspaper clippings discussing her son's accident and bills pertaining to costs for his medical care. [*See id.*, Exs. 25 and 26].[7] She did not, however, return the medical certification. [*See id.*]. In addition, she did not ask Ms. Mascaro or anyone else at Geodis what medical certification Ms. Mascaro was referring to in the Second Request Letter. [*See id.*, Ex. 5, Dingle Dep. at 193:5-8].

Based on Plaintiff's admissions at that time, she did not have a "medical report" to return to Geodis in response to Ms. Mascaro's two requests for "medical certifications." [*See id.*, Exs. 21, 24, 25]. Further, Plaintiff did not provide any additional details regarding her son's condition, to enable Geodis to determine whether her son had a "serious health condition" substantiating Plaintiff's alleged need for leave to care for him. [*See id.*, Ex. 5, Dingle Dep. at 193:9-13]. Plaintiff testified that the bills that she sent to Ms. Mascaro on September 19 did not explain what her son's condition was after July 28, 2013, the date of his accident, because the bills pertained to care provided to him on the date of the accident (even though they provided little to no information regarding his actual condition on that date). [*See id.*, Ex. 5, Dingle Dep. at 194:18-198:2; Ex. 26].

---

[7]   Other than what she provided with her September 19, 2013, fax, Plaintiff does not recall responding to the Second Request Letter by sending any communications or contacting Ms. Mascaro to provide any information regarding her son's health condition. [*See id.*, Ex. 5, Dingle Dep. at 192:24-193:13].

On September 20, 2013, Ms. Mascaro sent an e-mail to Plaintiff acknowledging receipt of Plaintiff's fax, stating that she was "sorry to hear this news and I hope [your son] is doing well." [*See id.*, Ex. 27]. Ms. Mascaro explained that what Plaintiff had provided was not the "'medical certification' that Geodis required from her in order to substantiate her need for leave." [*Id.*] Ms. Mascaro asked Plaintiff, "Will you be able to provide documentation from your son's physician stating his 'serious health condition' at the time of accident? Please let me know if this is something that you will be unable to provide." [*Id.*]. That day, Plaintiff responded to Ms. Mascaro's e-mail by stating, "I don't have any medical document, the only thing I have is $70,000. worth of medical bills . . . . I don't know what 'medical certification' you need." [*Id.*]. This was the second time that Plaintiff stated that she did not have the documentation that Geodis requested; however, for the first time, Plaintiff alleged that she did not "know what 'medical certification' [Geodis] need[ed]." [*Id.*; *see also* Ex. 5, Dingle Dep. at 201:7-10]. Plaintiff offered to send Geodis medical bills, and said, "[t]his is all I have. No, there is *no medical document for my son's life from a physician*." [*See id.*, Ex. 27 (emphasis added)]. At the time of this e-mail to Ms. Mascaro, 16 days had already elapsed since the day of Ms. Mascaro's First Request Letter for a health care provider certification. [*See generally id.*, Exs. 21 and 27]. When asked at her deposition why she waited until September 20, 2013, to ask what Ms. Mascaro meant by the words "medical certification," Plaintiff testified that Geodis "should have reached out to me" but then admitted that both Ms. Mascaro and Mr. Egas had told her that she could call them with questions. [*See id.*, Ex. 5, Dingle Dep. at 202:1-18].

Nonetheless, Geodis gave Plaintiff a final chance to return the necessary health care provider certification. [*See id.*, Ex. 28]. By letter dated September 24, 2013, Ms. Mascaro made a third official request for a medical certification to substantiate Plaintiff's eligibility for medical

leave ("Third Request Letter"). [*Id.*]. Ms. Mascaro gave Plaintiff an additional 15 days to return a "completed medical certification . . . to verify her eligibility for the requested medical leave" and clearly advised her that otherwise, Geodis "would proceed with the termination of [her] employment with Geodis Wilson effective October 9, 2013." [*Id.*]. It is undisputed that Ms. Mascaro also enclosed a copy of the medical certification at this time. [*Id.* Ex. 28; Ex. 5, Dingle Dep. at 206:2-5]. Plaintiff testified that after she received the Third Request Letter, she understood that Geodis needed her to return a completed medical certification within 15 days. [*See id.*, at 206:2-10]. Nonetheless, Plaintiff testified that she "felt" that everything she had provided to Geodis up until that point was sufficient to substantiate her need for leave through September 9, 2013. [*See id.*, at 208:2-12].

On October 8, 2013, Plaintiff sent to Ms. Mascaro a partially completed certification, filled out solely by Plaintiff and not by a health care provider, together with an October 7, 2013, doctor's note and an excuse slip for Plaintiff's son, permitting him to remain out of work from July 28, 2013, through August 12, 2013. [*See id.*, Ex. 29]. Plaintiff's fax cover sheet explained that her son's jaw was broken and his mouth was wired until September 6, 2013, but neither she nor her son's physician provided an explanation as to how he was impaired, if at all, and why she was required to care for him. [*Id.*] She further reiterated, "As stated in the e-mail on 9/20 there is *no medical certification form* that I can provide you with." [*Id.* (emphasis added)]. Plaintiff acknowledged at her deposition that the partial certification she returned to Geodis on October 8 was filled out by her and not by a health care provider, even though she understood that Geodis required the completed form "[f]or verification that [her son] needed [her] help." [*See id.*, Ex. 5, Dingle Dep. at 210:11-211:7]. She further claimed that it was *Geodis'* "responsibility to verify"

her son's need for her to care for him (*see id.*, Ex. 5, Dingle Dep. at 215:11-13), such as by reaching out to his doctors on her behalf.  [*See id.*, Ex. 5, Dingle Dep. at 214:21-215:1].[8]

On October 16, 2013, 22 days after Geodis' final request for a certification, Geodis informed Plaintiff by letter that her employment was terminated because her leave after August 5, 2013, was unsubstantiated.  [*See id.*, Ex. 30; *see also* Ex. 11, Mascaro Dep. at 184:5-12]. Geodis gave Plaintiff numerous opportunities over several weeks to supply the required medical certification, but ultimately Geodis decided to terminate Plaintiff because she failed to supply the information required to substantiate her eligibility for leave and, therefore, her absences were unjustified.  [*See id.* Ex. 11, Mascaro Dep. at 184:24-185:3; Ex. 31, Corp. Rep. Dep. at 19:24-25; 64:6-10].  Plaintiff testified that Geodis should not have terminated her and that she felt her termination was "unfair" because she "did nothing wrong."  [*See id.*, Dingle Dep. at 233:12-17].

## II.   Procedural History.

### A.   Pleadings.

Plaintiff filed a Complaint on March 12, 2015, alleging multiple violations of law as a result of her termination from employment with Geodis.  [*Id.*, Ex. 1].  The Complaint included five causes of action, alleging claims under the NJ FLA, the FMLA and the New Jersey Law Against Discrimination.  [*Id.*].  Defendants filed an Answer to the Complaint on or about May 1, 2015, denying all substantive allegations and asserting twenty-five defenses.  [*Id.*, Ex. 2].

### B.   Discovery is Complete.

The parties conducted written discovery and depositions.  [*Id.*, ¶ 4].  Defendants took Plaintiff's deposition on January 20, 2016.  [*Id.*].  Plaintiff took the depositions of Ms. Mascaro

---

[8]   By reason of HIPAA, Plaintiff's son's doctors would not have been permitted to provide such verification to Geodis, absent her son's authorization for them to do so, which neither she nor he provided.  Moreover, because Geodis could require a certification to demonstrate eligibility for NJ FLA leave, Geodis was not required to engage in "intrusive inquiries" to her son's physician regarding the status of his health condition.  *Cf. Thorson v. Geminilnc.,* 205 F.3d 370, 381 (8th Cir. 2000).

on January 27, 2016, Mr. Egas on April 28, 2016, and Geodis' corporate representative on April

28, 2016.  No discovery is outstanding.  [*Id.*].  Fact discovery ended on April 29, 2016.  [*Id.*].

     C.     <u>The Court Dismissed Counts 4 and 5 and All Claims Against Ms. Mascaro.</u>

On March 1, 2016, Plaintiff's counsel made a motion to voluntarily dismiss Counts 4 and

5 of the Complaint, which were claims arising under the NJ Law Against Discrimination.  [*See*

*id.*, ¶ 5; ECF Docket Entry No. 16].  By separate motion, Plaintiff's counsel moved to withdraw

all claims against Ms. Mascaro without prejudice.  [*See id.*, ¶ 5; ECF Docket Entry No. 17].  On

March 2, 2016, the Court entered two Orders:  (1) an Order dismissing Counts 4 and 5 of the

Complaint and (2) an Order dismissing all claims against Ms. Mascaro without prejudice.  [*See*

Rosen Cert., Exs. 3 and 4; ECF Docket Entry Nos. 18 and 19].  The only remaining causes of

action are Counts 1, 2 and 3 against Geodis alleging retaliation in violation of the FMLA and NJ

FLA, and interference with Plaintiff's right to take leave pursuant to the NJ FLA.  [*See id.*, ¶ 6;

*see also* Ex. 1].

<b><u>ARGUMENT</u></b>

**I.**     **Applicable Legal Standards.**

     A.     <u>Grounds for Granting Summary Judgment</u>

Summary judgment is appropriate when, drawing all reasonable inferences in the non-

movant's favor, there exists "no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a);  *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[T]he moving party must

show that the non-moving party has failed to establish one or more essential elements of its case

on which the non-moving party has the burden of proof at trial."  *McCabe v. Ernst & Young,*

*LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23,

106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Once the moving party has carried its burden under F.R.C.P. 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A non-movant must present more than a mere scintilla of evidence in his or her favor. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Rather, the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The material facts, or fact, become genuine when a reasonable trier of fact could render a verdict for the non-moving party. *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098, 109 S. Ct. 2449, 104 L. Ed. 2d 1004 (1989).

B.    Burden Shifting Framework

FMLA and NJ FLA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Capilli v. Whitesell Constr. Co.*, 271 Fed. Appx. 261, 265 (3d Cir. 2008); *Truesdell v. Source One Personnel Inc.*, Civil Action No. 07-1926, 2009 U.S. Dist. LEXIS 48703, *14 (D.N.J. June 9, 2009); *Colicchio v. Merck & Co.*, Civil Action No. 080-3593, 2013 U.S. Dist. LEXIS 10029, at *2 (D.N.J. Jan. 25, 2013) (observing that "New Jersey courts use the *McDonnell Douglas* analysis to decide [NJ]FLA retaliation claims.") (citation omitted). Under this framework, a plaintiff must first establish a *prima facie* case by a preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 802. For an interference claim, an employee must "show she was entitled to benefits under the [statute] and that she was denied them." *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520 (D.N.J. Aug. 5, 2008) (citing *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 485 (D.N.J. 2002)). "To assert a retaliation claim [under either the

16

FMLA or NJ FLA], a plaintiff must demonstrate that: (1) he or she is protected under the FMLA [or NJ FLA], (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her [protected leave] rights." *Dieng v. Computer Sci. Corp.*, Civil Action No. 14-5381, 2016 U.S. Dist. LEXIS 29642 (D.N.J. Mar. 8, 2016) (citing *Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 508 (3d Cir. 2009) (internal quotations omitted)); *see also DePalma v. Building Inspectors Underwriters*, 350 N.J. Super. 195, 214 (App. Div. 2002) (discussing elements of NJ FLA claim).

If the plaintiff makes out a *prima facie* claim, the burden then shifts to the defendant to articulate "some legitimate, nondiscriminatory reason for" its actions. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).   If the defendant satisfies this burden, the plaintiff must then prove that the defendant's purportedly legitimate reason is merely a pretext for discrimination. *See id.* at 804-05.   To do this, "the plaintiff must point to some evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.*

II.   **Summary Judgment Must Be Granted on Plaintiff's FMLA Retaliation Claim Because Plaintiff Has Provided No Evidence to Support Her Claim that She Was Denied Reinstatement or Wrongfully Terminated for Taking FMLA Leave.**

    A.   <u>Plaintiff Cannot Meet Her *Prima Facie* Burden on her FMLA Claim Because Her Termination, Which Arose Approximately Three Months After She Exhausted her FMLA Leave and Was Based on Her Failure to Provide a Medical Certification Pursuant to a Separate, Unrelated Statutory Leave, Was Not Causally Related to Her Exercise of FMLA Rights.</u>

Plaintiff was granted FMLA-protected leave covering the period from April 5, 2013, through July 28, 2013. [*See* Rosen Cert., Ex. 17].   She was terminated on October 16, 2013, over

six months after she commenced FMLA protected leave and approximately three months after her approved FMLA leave ended.  [*See* Exs. 17 and 30].

Plaintiff has not proffered any evidence of retaliation based on her having taken FMLA leave; she cannot maintain a retaliation claim simply because she took FMLA leave prior to her termination.  *See Best v. Hous. Auth.*, 61 F. Supp. 3d 465, 476 (D.N.J. 2014) ("Plaintiff cannot maintain a retaliation claim simply because he took FMLA leave prior to his termination. Absent additional facts, chronological coincidence is insufficient to maintain a claim for retaliation under FMLA, and the Court will grant Defendants' motion for summary judgment on these grounds.").

While there is no bright line rule regarding temporal proximity, the approximately three month period between the end of her FMLA leave and her termination date is not within the realm of what courts in this Circuit have found to create a temporal causal inference at the *prima facie* stage.  *Compare Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding two days unduly suggestive); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (three weeks); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (four days).

In any event, temporal proximity between an employee's FMLA leave and the discharge alone is insufficient to establish a *prima facie* case; there must be something more.  *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) ("However, 'even if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.'" (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotations omitted)). Moreover, in the intermediate period between her FMLA leave and termination, Plaintiff was granted a four-week leave extension, which permitted her to return to work on August 5, 2013.

[*See* Rosen Cert., Ex. 5, Dingle Dep. at 112:5-10; 123:2-5].   Geodis granted her this accommodation, which was not required pursuant to the FMLA. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3d Cir. 2002) (holding that the FMLA does not require "an employer to provide a reasonable accommodation to an employee . . . at the conclusion of his medical leave").

Plaintiff has presented no evidence that her termination was in any way connected to her taking FMLA leave.  Plaintiff admitted that no one at Geodis ever told her that she could not return to work after her FMLA leave ended or after her four week leave extension, and that she was granted all the leave she requested through August 4, 2013. [*See* Rosen Cert., Ex. 1, Dingle Dep. at 235:1-4; 236:25-237:6].  Plaintiff further admitted that she did not have any reason to believe that Geodis would not have permitted her to return to work and that she had no other facts to support her claim that she was retaliated against for taking FMLA leave.  [*See id.*, at 122:17-20; 234:9-18; 235:5-8; 236:19-24].  Accordingly, Plaintiff failed to meet her *prima facie* burden on her FMLA retaliation claim.

> B.   Plaintiff Cannot Demonstrate that Geodis' Legitimate, Non-Discriminatory Reason for Terminating Her Employment Was a Pretext for Her Having Taken FMLA Leave.

Even if Plaintiff were able to establish a *prima facie* case, Plaintiff's evidence of pretext is entirely lacking.  While Plaintiff claims in the Complaint that Geodis violated the FMLA because it "refused to allow her to return to work" following her FMLA leave (*see id.,* Ex. 1, Cmpt. ¶¶ 76-77), Plaintiff admitted at her deposition that she *does* "believe" that Geodis *would have permitted her* to return to work following her 12 weeks of FMLA covered-leave, which ended on June 28, 2013. [*See id.*, Ex. 5, Dingle Dep. at 234:12-235:4].  She further testified that she does not have "any other basis" or "any other facts" to support her claim that she was retaliated against for taking leave covered by the FMLA. [*See id.*, at 235:5-8]. Accordingly,

Plaintiff admits she has no basis for her FMLA retaliation claim as set forth in the Third Count of the Complaint.

As will be shown below in greater detail, Geodis has articulated a legitimate non-discriminatory reason for terminating Plaintiff's employment; namely, she was terminated solely because she did not provide sufficient documentation to substantiate her need for additional leave *pursuant to the NJ FLA,* in the form of a completed medical certification, and to justify her extended absence *after* her FMLA and extended leaves had ended. [*See* Rosen Cert., Ex. 30; Ex. 11, Mascaro Dep. at 184:24-185:3; Ex. 31, Corp. Rep. Dep. at 19:24-25; 64:6-10].[9]  Plaintiff has not proffered any evidence showing Geodis' articulated reasons for terminating her employment were either fabricated or were not sufficient to warrant the decision it reached.   Neither Plaintiff's disagreement with Geodis' decision to terminate her employment, nor her opinion on how Geodis handled its communications with her pertaining to her leave request [*see id.,* Ex. 5, Dingle Dep. at 214:21-215:1; 215:11-13; 233:12-17; 172:25-173:8; 187:17-189:7; 189:18-25], is relevant to the question of pretext and cannot serve as a basis to avoid the entry of summary judgment in Defendant's favor.  *See, e.g., Schoburg v. Dow Jones & Co.*, 2014 U.S. Dist. LEXIS 28008 (D.N.J. Mar. 4, 2014) (citations omitted) ("An employee's disagreement with a personnel decision does not establish pretext."); *Healy*, 860 F.2d at 1216 ("Our inquiry must concern pretext, and not an independent assessment of how we might evaluate and treat a loyal employee.").  Plaintiff's subjective belief that the decision to terminate her employment was discriminatory is insufficient.  *Ekhato v. Rite Aid Corp.*, 529 Fed. Appx. 152, 156 (3d Cir. 2013) ("[M]ere personal belief, conjecture[,] and speculation are insufficient to support an inference of

---

[9]   Defendant reserves the right to assert additional reasons showing that Plaintiff was not eligible for NJ FLA leave that are not reflected in this motion, should a trial be deemed necessary.

. . . discrimination." (internal quotations omitted)).  What matters is that she cannot demonstrate that Geodis' termination decision was in any way related to her having taken FMLA leave.

In the absence of any specific evidence to cast doubt on Defendant's articulated legitimate business reasons for terminating Plaintiff, Plaintiff fails to meet her burden regarding pretext, and summary judgment should be entered in Geodis' favor as a matter of law on Plaintiff's FMLA retaliation claim.

**III.  Summary Judgment Must Be Granted on Plaintiff's NJ FLA Retaliation Claim Because Plaintiff Has Provided No Evidence to Support Her Claim that She Was Entitled to NJ FLA Leave or that She Was Wrongfully Terminated for Taking Leave Under the NJ FLA.**

    A.    Plaintiff's NJ FLA Relation Claim Fails Because She Did Not Provide a Medical Certification Pursuant to her Employer's Request to Substantiate Her Entitlement to Leave.

Plaintiff was not entitled to benefits under the NJ FLA because she failed to provide a medical certification to substantiate her eligibility for such statutory leave.

The NJ FLA specifically permits an employer to "require" an employee to provide a "certification issued by a duly licensed health care provider or any other health care provider determined by the director to be capable of providing adequate certification." *See* N.J.S.A. § 34:11B-4(e).  The NJ FLA provides that "[w]here the certification is for the serious health condition of a family member of the employee, the certification shall be sufficient if it states: (a) the date on which the serious health condition commenced; (b) the probable duration of the condition; and (c) the medical facts *within the provider's knowledge regarding the condition.*" N.J.S.A. § 34:11B-4(e)(1) (emphasis added).[10] The NJ FLA does limit an employer's right to set

---

[10]  The FMLA contains a similar requirement that the medical certification be issued by the employee's heath care provider.  *See* 29 U.S.C. § 2613.  The Southern District of Ohio, in *Harcourt v Cincinnati Bell Tel. Co.*, 383 F. Supp. 2d 944, 953-956 (S.D. Ohio 2005), explained that "issued" by a health care provider means that the provider "endorses the

a reasonable due date for the return of such certification.  (*See generally* N.J.S.A. §34:11B-1, *et seq.*).

In the context of the FMLA, the Western District of Pennsylvania explained, in *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429 (W.D. Pa. 2008), that "[t]he option to require certification provides an employer with protection from abuse of the FMLA's generous provisions without requiring the employer to engage in intrusive inquiries."  *See also Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000).  Further, while not addressed in the NJ FLA or any applicable case law applying the NJ FLA that defense counsel has identified, the regulations implementing the FMLA explain that "[i]f the employee never produces the certification, the leave is not considered FMLA leave." 29 C.F.R. §§ 825.313(b).[11]  *See also Lipscomb v. Electronic Data Systems Corporation*, 275 Fed. Appx. 144 (3d Cir. April 2008) (granting summary judgment for employer where plaintiff failed to timely supply her medical certification under the FMLA).  Geodis' policies also advise employees that Geodis may require a medical certification in order to make a leave designation.  [*See* Ex. 10, p. 3/6].

Here, Plaintiff's leave cannot be considered NJ FLA-approved leave because she failed to meet her requirement to provide a medical certification, as set forth in more detail *supra,* after being asked on multiple occasions to do so.  Significantly, the incomplete certification Plaintiff ultimately submitted is insufficient, because Plaintiff's son's health care provider did not provide any medical facts regarding her son's condition to satisfy the requirements for a valid medical

---

certification form, thus indicating agreement or adopting a belief that information contained in the form is accurate."  Plaintiff's incomplete certification did not include any such endorsement.

[11]  Where the NJ FLA is silent on an issue or fails to define a term, courts have found that the "FMLA and its regulations have been deemed instructive" under those circumstances, even though the NJFLA preceded the FMLA.  *See e.g.*, *Zawadowicz v. CVS Corp.*, 99 F. Supp. 2d 518, 532 (D.N.J. 2000) (finding FMLA regulations instructive regarding employee notice issues that were not detailed in the NJFLA ).

certification, as set forth in N.J.S.A. § 34:11B-4(e)(1).  Plaintiff admitted that the incomplete

certification she submitted to Geodis on October 8, 2013, was written in her own handwriting

and not the physician's handwriting (*see* Rosen Cert., Ex. 5, Dingle Dep. at 210:11-21), and that

she did not have the doctor fill out any portion of the medical certification form.  (*See id.* at

211:1-3).  Plaintiff, therefore, never provided the certification that Geodis required of her in

order to substantiate her request for leave, despite having been given 42 days' notice of said

requirement, commencing from the date of Geodis' First Request Letter to the date of her

termination. [*See id.,* Exs. 21 and 30].

Plaintiff's failure to meet her requirement to provide a medical certification nullified any

entitlement she might otherwise have had to leave pursuant to the protections set forth in the NJ

FLA.  Accordingly, she has not met her *prima facie* burden.

B.     <u>Plaintiff's Claim Fails Because She Did Not Provide a Recognized Basis to
Substantiate that She was Entitled to Leave.</u>

Related to her failure to provide a medical certification, Plaintiff's NJ FLA retaliation

claim must fail because she has not provided any evidence recognized by the NJ FLA that she

needed time off to care for her son *based on a physician's determination regarding her son's*

*condition*.

Plaintiff admitted during her deposition that she took it upon herself to make the

determination that *she* wanted to care for her son.  Plaintiff testified,  "I'm his mother and I

*wanted* to take care of him."  [*See id.* at 144:5-6].  She did not proffer any evidence that a

physician made the determination that she needed to care for her son.  Plaintiff, unilaterally

deciding that *she* needed to be there to care for her son and not another member of her large

family, testified, "This was my responsibility and I needed to care for my son." [*See id.* at

143:21-144:12; *see also id.* at 13:10-26:13].  She further explained that it was her judgment that

taking care of her son is what she should do as a mother and that she felt that her son was more comfortable having her care for him.  [*See id.* at 145:7-13; 232:4-16].

Moreover, Plaintiff, not a physician, decided on her own when she could return to work at Geodis; she chose September 9, 2013, as her return date because her son's doctor was removing the wires in his mouth on September 6, and if "he was able to speak and eat and get his strength back" then she could return to work.  [*See id.* at 142:2-13].  Similarly, she testified: "*I decided on my own* that when he was able to speak to me and eat solid foods . . . , I would be able to return back to work without him needing my assistance." [*See id.* at 143:14-20 (emphasis added)].

The only papers setting forth her son's condition that Plaintiff provided to Geodis were his discharge papers from the hospital immediately after his car accident.  [*Id.*, Ex. 14].  Based on those discharge papers, it did not appear that his injuries were that severe and his care needs were not sufficiently extensive to justify a leave of more than 4 weeks' duration.  [*Id.*, Ex. 14]. Accordingly, Geodis had a good faith basis to request more information in the form of a medical certification from her son's physician.

Although Plaintiff may have felt compelled as a mother to be there for her son and take care of him, Plaintiff's feelings cannot overcome the statutory requirement set forth in N.J.S.A. § 34:11B-4(e)(1) for a health care provider to make the determination that such leave is substantiated due to her son's serious health condition.  *See e.g., Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 952 (7th Cir. 2004) (affirming summary judgment for employer on an FMLA claim, finding that "[w]anting to stay home with one's wife until she has the baby, while understandable, is not the same thing as wanting to stay home to care for a spouse who has a serious health condition."); *Gutierrez v. 78th Judicial Dist. Court*, Civil Action No. 1:07-cv-

1268, 2009 U.S. Dist. LEXIS 73377, at *39-40 (W.D. Mich. Aug. 18, 2009) (affirming summary judgment for employment on FMLA claim and other claims, finding that an employee's "unsubstantiated assertions about her alleged condition, symptoms, and limitations -- and her subjective layperson's opinion or belief that her health condition is serious and qualifies for FMLA leave -- provide no basis for an employer to conclude there is a reasonable possibility that the employee qualifies for FMLA leave").

Moreover, while Plaintiff may have felt that she provided "enough" information to Geodis regarding the details of her son's accident and his condition (*see* Rosen Cert. Ex. 5, Dingle Dep. at 174:3-20; 175:23), her feelings do not abrogate her statutory obligation to provide the information, in the form of a medical certification, that Geodis needed to make an assessment of whether or not she was eligible for leave.  As Ms. Mascaro explained at her deposition, it is not that she or anyone at Geodis doubted that Plaintiff's son was injured, but Geodis could not verify the extent of the injury or Plaintiff's need to care for her son by any means other than based on the documentation that Plaintiff provided to Geodis.  [*See id.* Ex. 11, Mascaro Dep. at 45:2-18].  The little information Plaintiff provided Geodis about her son's condition pertained only to his condition *as of the date of his accident and the date that the wires were being removed from his jaws*; she admitted at her deposition that she did not provide any other information regarding his alleged limitations or the reasons for her need to care for her son. [*See* Rosen Cert., Ex. 5, Dingle Dep. at 176:5-178:12; Ex. 20].

Because Plaintiff did not proffer any statutorily or judicially recognized evidence to Geodis that she was ever entitled to NJ FLA leave, she has not met her *prima facie* burden.

C.    <u>Plaintiff Cannot Demonstrate that Geodis' Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment Was a Pretext.</u>

As explained in more detail in Section II B, *supra,* and incorporated here, Plaintiff has not proffered any evidence that Geodis' reasons for terminating her employment were pretextual.

Geodis has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, which was based on her failure to substantiate her eligibility for medical leave by providing a complete medical certification, and her absence from work for several weeks without providing documentation substantiating her need for her absence for that entire time period. [*See id.*, Ex. 30; Ex. 11, Mascaro Dep. at 184:24-185:3; Ex. 31, Corp. Rep. Dep. at 19:24-25; 64:6-10]. The only statements that Plaintiff made at her deposition in support of her claim that Geodis retaliated against her for seeking to take NJ FLA leave were based on her disagreement with Geodis' decision to terminate her employment and her feelings that Geodis was "very inconsiderate" when communicating with her. [*See id.*, Ex. 5, Dingle Dep. at 214:21-215:1; 215:11-13; 233:12-17; 172:25-173:8;187:17-189:7; 189:18-25].

As a matter of law, Plaintiff cannot demonstrate pretext by claiming that Geodis' termination decision was unjust. *See, e.g., Farmer v. Camden City Bd. of Educ.*, Civil Action No. 03-685, 2005 U.S. Dist. LEXIS 7339, at *38-39 (D.N.J. Mar. 28, 2005) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination."). Geodis' policies and communications adequately notified Plaintiff of the consequences for failing to return a completed medical certification. [*See id.*, Ex. 30; Ex. 10, NJ Handbook Addendum pp. 3/6].

Plaintiff has not met, and cannot meet, her burden to demonstrate pretext, because she relies solely on her surmise, conjecture and belief that Geodis may have acted improperly by

exercising its right to deny her NJ FLA-approved leave.   Accordingly, summary judgment

should be entered in Geodis' favor as a matter of law on Plaintiff's NJ FLA retaliation claim.

**IV.    Summary Judgment Must be Granted Dismissing Plaintiff's NJ FLA Interference Claim Because She Was Not Entitled To Leave Under that Statute and Because Her Claim is Duplicative of Her Retaliation Claim.**

   A.     Plaintiff's Interference Claim is Duplicative of Her Retaliation Claim.

   An interference claim that is duplicative of a plaintiff's retaliation claim must be

dismissed.  *See Lichtenstein v. University of Pittsburgh Medical Center*, 598 Fed. App'x. 109,

113 (3d Cir. 2015) (unpublished) (a plaintiff may not "have an automatic right to claim

interference where . . . the claim is so clearly redundant to the retaliation claim.")  (quoting

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, n.25 (3d Cir. Pa. 2012)); *Beese v.*

*Meridian Health Sys.*, Civil Action No. 11-7505(FLW), 2014 U.S. Dist. LEXIS 96498, 37-38

(D.N.J. July 16, 2014) (dismissing plaintiff's FMLA interference claim as duplicative of her

FMLA retaliation claim, finding that "Plaintiff's retaliation and interference claims are identical,

both based on the Plaintiff being disciplined, via the Final Warning, having taken a protected

FMLA absence").  In *Lichtenstein*, the Third Circuit determined that the plaintiff's interference

claim was "in form and substance . . . a claim for retaliation", where plaintiff had not claimed

"that any benefits were actually withheld."  *Id.   See also Yamamoto v. Panasonic Corp. of N.*

*Am.*, Civil Action No. 12-2352 JLL, 2013 U.S. Dist. LEXIS 93244 (D.N.J. July 2, 2013)

(dismissing FMLA interference claim where "the premise of both [interference and retaliation]

claims is that defendant wrongfully terminated plaintiff when she returned from FMLA leave.");

*Kumar v. Johnson & Johnson, Inc.*, Civ. Action No. 12-779, 2014 U.S. Dist. LEXIS 154650, n.8

(D.N.J. October 21, 2014) (granting summary judgment as to plaintiff's FMLA interference

claim where her "only claim of 'interference' under the FMLA is the same as her claim for retaliation- 'not being returned to the same job with the same opportunities for advancement'").

Similarly, Plaintiff's interference claim and retaliation claim have the same premise – that Geodis allegedly terminated Plaintiff's employment because she sought to take NJ FLA leave. Count I (Plaintiff's NJ FLA Interference Claim) alleges that "Defendants refused to allow the entitled leave and terminated Ms. Hall-Dingle for a reason directly related to the leave request." [*See* Rosen Cert., Ex. 1, Cmpt. ¶ 43]. Similarly, Count II (Plaintiff's NJ FLA Retaliation Claim) essentially alleges that Geodis violated the NJ FLA by failing to reinstate her and terminating her employment. [*See id.*, Cmpt. ¶¶ 58-72]. Plaintiff has not alleged any precise facts to differentiate between her two NJ FLA claims, which are essentially both focused on the allegation that Geodis terminated her employment. Accordingly, Plaintiff's NJ FLA interference claim should be dismissed because it is duplicative of her NJ FLA retaliation claim.

B.   Plaintiff's Interference Claim Fails Because She Did Not Provide a Medical Certification or Otherwise Substantiate that She Was Entitled to Leave.

Even assuming, *arguendo,* that Plaintiff's interference claim is somehow distinguishable from her retaliation claim, her NJ FLA interference claim still fails because there is no evidence that Geodis ever denied her any leave that she was eligible to take under the NJ FLA. *See Moore v. U.S. Foodservice, Inc.*, Civ. No. 11-2460, 2013 U.S. Dist. LEXIS 140548 (D.N.J. Sept. 30, 2013) (recognizing that "if Plaintiff was not denied FMLA leave to which he was entitled, summary judgment must be granted in favor of the defense on Plaintiff's claim of interference."). There is no evidence here that Plaintiff was entitled to NJ FLA leave for her son's medical condition because, as previously explained in detail in Sections III A and B, and incorporated herein: (1) Plaintiff did not return a completed medical certification to substantiate her need for leave, and, relatedly, (2) Plaintiff did not proffer any statutorily recognized evidence that a health

care provider determined that her son suffered a serious health condition and that she needed to care for him.  *See Cluney v. Mon-Oc Fed. Credit Union*, 2006 N.J. Super. Unpub. LEXIS 2019, 41-42 (App. Div. Aug. 1, 2006) (finding that plaintiff had no cause of action for discrimination or interference because her leave was not protected by either the FMLA or the NJ FLA). Accordingly, because Plaintiff did not proffer any evidence to Geodis that she was entitled to NJ FLA leave, she cannot demonstrate that Geodis interfered with any recognized right that she had to such leave.

C.      Plaintiff Cannot Demonstrate that Geodis' Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment Was a Pretext.

For the reasons set forth in Sections II B and III C, Plaintiff cannot demonstrate that Geodis' reasons for terminating her employment were pretextual.  For that additional reason, Plaintiff's NJ FLA interference claim fails as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Geodis respectfully requests that its motion for summary judgment dismissing the complaint be granted in its entirety.

Respectfully submitted,

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5400
*Attorneys for Defendant*
*Geodis Wilson USA, Inc.*

By: /s/ David I. Rosen
      David I. Rosen

Dated: June 28, 2016