<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARY HALL-DINGLE, | : | **Civil Action No. 15-1868 (SRC)** |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| GEODIS WILSON USA, INC.; LISA | : | |
| MASCARO; and JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>CHESLER</u>, District Judge

      This matter comes before the Court upon the motion for summary judgment by Defendant Geodis Wilson USA, Inc. ("Geodis") [Docket Entry 21]. Plaintiff Mary Hall-Dingle ("Ms. Dingle") opposes the motion [Docket Entry 24]. The Court has considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Defendant's motion for summary judgment.

### I.    BACKGROUND

      This action arises out of the October 16, 2013 termination of Plaintiff Mary Hall-Dingle ("Ms. Dingle") from her employment with Defendant company Geodis Wilson USA, Inc. ("Geodis"). Plaintiff began working for Defendant in May 2012. (Statement of Material Facts [hereinafter SMF], ¶ 1; Plaintiff's Responsive Statement of Material Facts, ¶ 1). She was terminated after taking two consecutive leaves of absences – one to recover from her own injury and the other to care for her son's injury. (SMF, ¶¶ 7, 39; PRSMF, ¶¶ 7, 39).

## A. PLAINTIFF'S FIRST LEAVE OF ABSENCE

Plaintiff first requested leave in April 2013 because shoulder pain prevented her from working.  (SMF, ¶¶ 6-7; PRSMF, ¶¶ 6-7; Rosen Cert. Ex. 18).  In order to request this leave, Plaintiff spoke with Lisa Mascaro ("Ms. Mascaro"), Geodis' Human Resources Benefits Specialist, on the phone and faxed doctors' notes to Ms. Mascaro.  (Mascaro Dep. 11:9-12, Jan. 27, 2016; Rosen Cert. Ex. 12).  In the fax, dated April 11, 2013, Plaintiff indicated that she was submitting doctors' notes until her next doctor's appointment, when she would provide more paperwork to confirm her absences.  (Rosen Cert. Ex. 12).  Ms. Mascaro sent back a letter dated April 16, 2013, explaining Plaintiff's right to a leave of absence under the federal Family and Medical Leave Act ("FMLA") and enclosing forms for a physician to fill out so that Plaintiff could be granted FMLA leave.  (Rosen Cert. Ex. 13).  One of the forms was the standard Department of Labor Certification of a Health Care Provider form used for employees taking FMLA leave.  (Rosen Cert. Ex. 16).  On April 23, 2013, Plaintiff responded with a fax attaching more doctors' notes and emergency room paperwork and stating that she would have her doctor fill out the forms that Ms. Mascaro sent.  (Rosen Cert. Ex. 14).

Ms. Mascaro sent back a letter with the subject line "RE: Unscheduled and unjustified absences" on April 24, 2013.  (Wall Cert. Ex. 8).  The letter listed a timeline of Plaintiff's absences and times where Geodis had no proof that she was under a physician's care.  (Wall Cert. Ex. 8).  It also stated:

> If we do not receive any documentation that you were under a physician's care we will have no other option but to terminate your employment due to job abandonment.  Also, to date, we have not received any FMLA paperwork protecting your current position.  The company has accommodated your absences from April 1, 2013 thru [sic] the present. Due to the needs of the business your work will need to be distributed accordingly per company discretion.

(Wall Cert. Ex. 8).  After receiving this letter, Plaintiff presented the required paperwork. (Rosen Cert. Ex. 17).  Defendant granted Plaintiff FMLA leave for a period of April 5, 2013 through June 28, 2013.  (SMF, ¶ 7; PRSMF, ¶ 7; Rosen Cert. Ex. 17).  On June 28, 2013, Plaintiff requested an additional four weeks of medical leave because of continued shoulder pain. (SMF, ¶ 11; PRSMF, ¶ 11; Rosen Cert. Ex. 18).  Defendant granted this request as well.  (SMF, ¶ 12; PRSMF, ¶ 12).

### B. Plaintiff's Next Leave of Absence

One week before Plaintiff was scheduled to return to work, on July 28, 2013, Plaintiff's son was in a car accident.  (SMF, ¶¶ 16-17; PRSMF, ¶¶ 16-17).  Plaintiff called her supervisor, Patricia Vargas ("Ms. Vargas"), on August 2, 2013 and left a voicemail, informing her of the accident.  (Dingle Dep. 45:23-25, 123:6-15, Jan. 20, 2016).  On August 5, 2013, Plaintiff emailed Ms. Vargas and Ms. Mascaro, indicating that she could not return to work that day.  (SMF, ¶ 18; PRSMF, ¶ 18; Wall Cert. Ex. 9).  The email stated that her son had been in a "deadly car accident, and I don't feel he is ready to be left alone at this time.  According to the hospital, it will be another week or two before he will be feeling better."  (SMF, ¶¶ 18-19; PRSMF, ¶¶ 18-19; Wall Cert. Ex. 9).  Nobody from Defendant company responded to the email.  (Wall Cert. Ex. 10; Mascaro Dep. 101:11-102:9).

After Defendant did not respond to her August 2nd voicemail or August 5th email, Plaintiff called and left two voicemails for Ms. Mascaro on August 23rd and 26th.  (SMF, ¶ 20; PRSMF, ¶ 20; Wall Cert. Ex. 9).  Plaintiff again received no reply, so she wrote an email to Ms. Mascaro on August 29th, stating that she expected to return to work on September 9, 2013, because wires were being removed from her son's jaws on September 6, 2013.  (SMF, ¶ 20; PRSMF, ¶ 20; Wall Cert. Ex. 9).

Defendant's first response to Plaintiff was a letter dated September 4, 2013, almost one month after Plaintiff initially contacted Defendant about her son's accident.  (Wall Cert. Ex. 12). In Defendant's letter, which was entitled "Re: Continued Leave of Absence", Ms. Mascaro wrote that "apparently your son was involved in a car accident" and that Plaintiff needed to "provide us with detailed information about your son's serious health condition, i.e. we need a medical certification attesting this situation."  (SMF, ¶ 24; PRSMF, ¶ 24; Wall Cert. Ex. 12).  The letter did not state whether Plaintiff could return to work, even though the letter acknowledged that Plaintiff told Defendant that she could return on Monday, September 9.  (Wall Cert. Ex. 12). Plaintiff responded with a phone call, voicemail, and an email on September 6, 2013, asking Ms. Mascaro to "call or e-mail and left [sic] me know if I can return to work on Monday."  (Wall Cert. Ex. 13).  Geodis's Human Resources Manager, Juan Egas, responded, asking Plaintiff to "urgently provide us with answers to the letter mailed to you by Lisa [Mascaro] and we ask that you refrain from contacting the Branch until you hear back from the Human Resources Department.  Should you have any questions, please call me directly."  (Wall Cert. Ex. 14).  He did not respond to Plaintiff's request to return to work on September 9th.  (Wall Cert. Ex. 14).

On September 11, 2013, Ms. Mascaro sent a letter asking again for "detailed information about your son's serious health condition, i.e. we need a medical certification attesting this situation" and asking for Plaintiff to "contact us" by September 20, 2013.  (Rosen Cert. Ex. 24). Plaintiff responded by faxing a newspaper article about her son's accident and medical bills. (Wall Cert Ex. 15, 16).  Ms. Mascaro responded that "[t]he document (newspaper article) that you provided is not considered 'medical certification' that would require your extended absence from work.  Will you be able to provide documentation from your son's physician stating his 'serious health condition' at the time of accident?"  (Wall Cert. Ex. 15).  Plaintiff responded the

4

same day, stating that she did not "have any medical document, the only thing I have is $70,000 worth of medical bills" and that she did not "know what 'medical certification you need.'" (Wall Cert. Ex. 15). She wrote that her son "left the hospital with a broken jaw, bruised chest, knee, hip, ankle and on crutches under pain medication . . ." (Wall Cert. Ex. 15).

On September 24, 2013, Ms. Mascaro responded and attached a medical certification form for Plaintiff to fill out. (SMF, ¶ 33; PRSMF, ¶¶ 24-33). According to Plaintiff, this was the first time that Ms. Mascaro attached a form. (PRSMF, ¶¶ 24-33). The form provided was a standard Department of Labor form entitled "Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Medical Leave Act)." (Wall Cert. Ex. 16). Below that heading, the words "New Jersey Family Leave Act" were added. (Wall Cert. Ex. 16). Plaintiff alleges that this was the first time that Defendant referred to the New Jersey Family Leave Act ("NJ FLA") in its communications with Plaintiff after her son's accident. (PRSMF, ¶ 33). Ms. Mascaro gave Plaintiff fifteen days, until October 9, 2013, to complete the form and return it to the Human Resources Department. (Wall Cert. Ex. 16).

Plaintiff responded by fax on October 8, 2013, with a partially completed certification form. (PRSMF, ¶¶ 34-35; Wall Cert. Ex. 17). She completed the section of the form that the employee is to fill out, but did not complete the section that a physician is to complete, instead submitting three doctors' notes. (PRSMF, ¶¶ 34-35; Wall Cert. Ex. 17). One note was from the Practice Administrator in the Trauma Division of Cooper University Physicians Department of Surgery, and it indicated that John Dingle "was brought to Cooper University Hospital on 7/28/13 via helicopter for injuries sustained in a motor vehicle crash. He will follow-up with an oral maxilla-facial surgeon within the next two weeks. Please excuse him from work during this time frame of 7/28/13 until approximately 8/12/13." (Wall Cert. Ex. 17). The other notes were

from a doctor at Cooper Oral and Maxillofacial Surgeons, certifying that John Dingle had appointments on August 14, 2013, and September 6, 2013 and that Plaintiff accompanied him to those appointments.  (Wall Cert. Ex. 17).  Defendant never contacted Plaintiff indicating that her submission was insufficient.

Defendant sent Plaintiff a termination letter dated October 16, 2013.  (Wall Cert. Ex. 18). Defendant claims that Plaintiff was terminated because she failed to provide the required completed form to substantiate her eligibility for leave.  (SMF, ¶ 37; Wall Cert. Ex. 18). Defendant argues that the certification requirement, along with a description of NJ FLA and FMLA policies, was outlined in Defendant's employee handbook and the New Jersey addendum to the handbook.  (SMF, ¶¶ 2, 3; PRSMF, ¶¶ 2, 3).  According to Defendant, Plaintiff received a hard copy of the handbook when she began her employment and was able to access the information on Defendant's intranet site called "FreightNet".  (Egas Dep. 27:14-22, Apr. 28, 2016).  Plaintiff, on the other hand, argues that FreightNet was inaccessible to employees who were already out on leave.  (Egas Dep. 27:14-22).  She also claims that Defendant should have notified her that the doctor's notes she provided to certify her son's serious injury were insufficient.  Plaintiff points to the New Jersey addendum to Defendant's employee handbook, which states that "[t]he Company shall inform employees if submitted medical certification are incomplete or insufficient and provide employees at least seven calendar days to cure deficiencies."  (Wall Cert. Ex. 6).

Plaintiff's Complaint asserts that Defendant interfered with Plaintiff's right to take leave under the NJ FLA and retaliated against Plaintiff in violation of both the FMLA and the NJ FLA.[1]  Defendant moves for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district

---

[1] Plaintiff voluntarily dismissed Counts Four and Five of her original Complaint and withdrew all claims against Ms. Mascaro without prejudice.  This motion therefore concerns Counts One, Two, and Three of Plaintiff's Complaint.

court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### III.    ANALYSIS

#### A.    INTERFERENCE CLAIM

Plaintiff's first Count of the Complaint alleges that Defendant interfered with her right to take NJ FLA leave to care for her seriously injured son. The New Jersey Family Leave Act

allows eligible employees to take off up to twelve weeks in any 24-month period to care for a family member's serious health condition without being terminated upon return.  N.J.S.A. § 34:11B-3(g).  Under New Jersey law, if an employee first takes FMLA leave for the employee's own disability, and subsequently takes NJ FLA leave to care for a family member's serious health condition, the two terms of leave run consecutively.  *Cluney v. Mon-Oc Fed. Credit Union*, No. A-4472-04T5, 2006 WL 2128985, at *14 (N.J. Super. Ct. App. Div. Aug. 1, 2006) (citing N.J.A.C. § 13:14-1.6(b)(2)).  An employer may not "interfere with, restrain or deny the exercise of, or the attempt to exercise, the rights provided" in the NJ FLA, or "withhold the benefits provided for under" the NJ FLA.  N.J.S.A. § 34:11B-9(a).

The Third Circuit has stated that Courts should analyze interference claims under the NJ FLA in the same way as they analyze interference claims under the FMLA.  *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 245 n. 65 (3d Cir. 2016).  Thus, a plaintiff bringing an interference claim under the NJ FLA must show that she was entitled to benefits and denied those benefits.  *Robbins v. U.S. Foodservice, Inc.*, No. 11-4599, 2012 WL 3781258, at *5 (D.N.J. Aug. 30, 2012) (citing *Parker v. Hanhemann Univ. Hosp.,* 234 F.Supp.2d 478, 485 (D.N.J. 2002)).  The employer's actions must make the employee "unable to exercise that right in a meaningful way, thereby causing injury" in order for the interference claim to succeed. *Fraternal Order of Police, Lodge 1*, 842 F.3d at 246 n. 72.[2]  Defendant argues that Plaintiff cannot make a claim for interference under the NJ FLA because she never proved that she was

---

[2] Because "[a]n interference action is not about discrimination, [but . . .] only about whether the employer provided the employee with the entitlements guaranteed" under the Act, courts do not apply the *McDonnell-Douglas* burden-shifting analysis to interference claims. *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (internal citations omitted).

entitled to benefits.  Plaintiff responds that she was entitled to benefits and only did not

substantiate her leave because Defendant interfered with her ability to do so.[3]

Courts have found interference of FMLA rights when an employer fails to advise an

employee of his rights to a leave of absence after the employee has notified the employer of

qualifying circumstances, and the failure to advise prejudices the employee.  *Conoshenti v. Pub.*

*Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004), *holding modified by Erdman v.*

*Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009).  New Jersey law, like federal law, requires an

employer to inform the employee of her NJ FLA rights and obligations when the employee has

informed the employer of her need to take leave to care for a seriously ill family member.  *See*

*D'Alia v. Allied-Signal Corp.,* 260 N.J. Super. 1, 10 (App. Div.1992) (holding that once an

employee provides enough information that "reasonably apprise[s]" the employer that the

employee needs time off for a family member's serious health condition under the Act, "[i]t is

incumbent upon the employer to apprise the employee of his or her rights and to effectuate

---

[3] Defendant argues that Plaintiff's interference claim fails because it is duplicative of Plaintiff's retaliation claim.  Defendant argues that Plaintiff bases both his claims on the fact that "Geodis allegedly terminated Plaintiff's employment because she sought to take NJ FLA leave."  (D. Mov. Br. at 28).  Although a plaintiff may be precluded from bringing both an interference and retaliation claim where the interference claim "is so clearly redundant to the retaliation claim" and is "in form *and* substance . . . a claim for retaliation," a plaintiff may bring an interference claim if she claims that benefits were actually withheld or cut short.  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 598 F. App'x 109, 113-14 (3d Cir. 2015); *Kohler v. TE Wire & Cable LLC*, No. 14-3200, 2016 WL 885045, at *10 (D.N.J. Mar. 8, 2016), *reconsideration denied,* No. 14-3200, 2016 WL 1626956 (D.N.J. Apr. 25, 2016).  Here, Plaintiff makes the claim that her NJ FLA benefits were intentionally withheld and that Defendant interfered with her ability to receive NJ FLA benefits by failing to advise her of her NJ FLA rights and failing to allow her to cure her deficient certification.  In contrast, her retaliation claim is that Defendant retaliated against her for her extended absence and thus terminated her.  Thus, at the summary judgment stage, taking all inferences in the light most favorable to the Plaintiff, the Court finds that a reasonable jury could see Plaintiff's interference and retaliation claims as two separate claims that are not duplicative.  Thus, Plaintiff can proceed with both her interference and retaliation claims.

them.").   Thus, New Jersey courts would likely also find that an employer interferes with an employee's NJ FLA rights if it fails to advise the employee of NJ FLA rights after being informed of the employee's qualifying circumstances.

Plaintiff argues that Defendant failed to advise her of her NJ FLA rights and obligations. Plaintiff provides evidence that Defendant did not refer to the NJ FLA in its communications to Plaintiff at all, until it mentioned the "New Jersey Family Leave Act" on the certification form it provided to Plaintiff on September 24, 2016.  Moreover, Plaintiff presents evidence that the form simply noted the name of the Act, but the form did not explain what Plaintiff's rights and obligations were under the NJ FLA.  According to Plaintiff, Defendant did not provide this form until nearly two months after Plaintiff had informed Defendant of her need to care for her son, weeks after she had stated that she was willing to come back to work, and after Plaintiff had indicated that she did not know what medical certification form Defendant needed.  Defendant, on the other hand, argues that it advised Plaintiff of her NJ FLA rights in its handbook.  Plaintiff responds that she was unable to access the handbook on Defendant's intranet site when she was already on leave.  Thus, there is a genuine issue of material fact as to whether Defendant provided sufficient, timely notice to Plaintiff of her NJ FLA rights.

Regarding the prejudice element of the interference claim, a jury could find that Plaintiff was prejudiced by the lack of notice, because she did not completely fill out her medical certification form and perhaps she would have if she knew it was part of an NJ FLA leave application.  After all, when she was informed that she could take FMLA leave for her earlier shoulder injury, she did complete the forms.  Because she did not complete the medical certification form for her NJ FLA leave, her benefits were withheld and she was terminated.  Thus, there is enough to raise a genuine issue of material fact that Defendant failed to advise

Plaintiff of her rights and obligations under the NJ FLA and that Plaintiff was prejudiced as a result.

Courts have also found interference with FMLA rights when an employer fails to advise the employee of a deficiency in a certification and fails to provide the employee seven days to cure the deficiency. *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 155-56 (3d Cir. 2015) (citing 29 C.F.R. § 825.305(b)) (requiring an employer to allow an employee seven days to cure defects in an incomplete certification for medical leave under the FMLA). Although Plaintiff does not point to a New Jersey regulation or case that shows that the NJ FLA includes an opportunity to cure provision like the FMLA does, Defendant admits that "[w]here the NJ FLA is silent on an issue or fails to define a term, courts have found that the 'FMLA and its regulations have been deemed instructive' under those circumstances, even though the NJ FLA preceded the FMLA." (D. Mov. Br. at 22 n.11) (citing *Zawadowicz v. CVS Corp.*, 99 F. Supp. 2d 518, 532 (D.N.J. 2000) (finding FMLA regulations instructive regarding employee notice issues that were not detailed in the NJ FLA).

Moreover, New Jersey Courts would likely find that an employer is required to provide the opportunity to cure a deficient NJ FLA certification in a situation such as this one for two reasons. First, although Defendant added in the words "New Jersey Family Leave Act" on the certification form it provided to Plaintiff, Defendant provided Plaintiff with a Department of Labor certification form that is provided to employees requesting federal FMLA leave. Thus, if an employer receives an incomplete or insufficient certification form of this type, the employee is required to inform the employee of deficiencies and provide seven days for the employee to cure any deficiencies under the FMLA. *See* 29 C.F.R. § 825.305(b). Second, Defendant's handbook specifically indicates that Defendant's policy was to allow the opportunity to cure

deficient certifications.  In the "New Jersey Addendum to the Geodis Employee Handbook",

Defendant provides that "[t]he Company shall inform employees if submitted medical

certification are incomplete or insufficient and provide employees at least seven calendar days to

cure deficiencies."  (Wall Cert. Ex. 6).[4]  Thus, New Jersey courts would likely find that an

employer interferes with NJ FLA rights if it fails to provide the opportunity to cure a deficiency

especially when, as here, the employer provides a standard FMLA form and has a policy of

allowing an opportunity to cure.

> Here, Plaintiff provides evidence that Defendant failed to inform Plaintiff of deficiencies

in her certification and did not allow her time to fix it.  According to Plaintiff, Plaintiff submitted

a partially filled out form, along with a note from the Practice Administrator in the Trauma

Division of Cooper University Physicians Department of Surgery, and excuse slips filled out by

a doctor at Cooper Oral and Maxillofacial Surgeons.  The notes certified the date that John

Dingle was brought to the hospital via helicopter for injuries after a motor vehicle crash and that

he needed to see an oral maxilla-facial surgeon within two weeks.  If Defendant found the

FMLA certification form incomplete, Defendant was required under FMLA law and its own

handbook to provide an opportunity to cure those deficiencies.[5]  A jury could reasonably find

---

[4] Defendant argues that the employee handbook policy is not binding because of a disclaimer.
But, regardless of whether the handbook created a binding contract, it laid out Defendant's
policy of providing an opportunity to cure.

[5] Defendant claims that Plaintiff's certification was neither incomplete nor insufficient, but that
she submitted no certification from a health care provider at all and thus Defendant did not need
to provide her the opportunity to cure.  Under the FMLA:

> A certification is considered incomplete if the employer receives a certification, but one
> or more of the applicable entries have not been completed.  A certification is considered
> insufficient if the employer receives a complete certification, but the information
> provided is vague, ambiguous, or non-responsive.  The employer must provide the
> employee with seven calendar days (unless not practicable under the particular
> circumstances despite the employee's diligent good faith efforts) to cure any such

that Plaintiff was prejudiced because she was not given the opportunity to cure her certification

form and thus she was terminated.  Taking Plaintiff's evidence as true, Defendant failed to

advise her of her NJ FLA rights and failed to allow her to cure a deficiency in her certification,

causing her prejudice.  Thus, this Court denies Defendant's motion for summary judgment on

Plaintiff's NJ FLA interference claim.

### B.  Retaliation Claims

Next, Defendant moves for summary judgment on Plaintiff's two retaliation claims – one

under the NJ FLA and the other under the FMLA.  Our courts apply the three-step *McDonnell*

---

deficiency.  If the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313.  A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification.

29 C.F.R. § 825.305.  Here, Plaintiff returned a partially completed certification form in which she filled out the section for employees to complete.  She did not fill out the section which a physician was to complete.  Instead, she returned health care provider notes.  The notes provided much of the information required for a medical certification to be sufficient under the NJ FLA.  Under N.J.S.A. § 34:11B-4:

An employer may require that any period of family leave be supported by certification issued by a duly licensed health care provider or any other health care provider determined by the director to be capable of providing adequate certification.  Where the certification is for the serious health condition of a family member of the employee, the certification *shall be sufficient* if it states: (a) the date on which the serious health condition commenced; (b) the probable duration of the condition; and (c) the medical facts within the provider's knowledge regarding the condition.

N.J.S.A. § 34:11B-4 (emphasis added).  New Jersey law does not require that a specific form be filled out and simply states that if a duly licensed health care provider certifies to certain information, it is sufficient.  Here, Plaintiff submitted notes from physicians including some, if not all, of the required information of a sufficient certification under New Jersey law.  Thus, when considering the partially completed form along with the notes, a reasonable jury could find that Plaintiff submitted a certification, even if it was incomplete.  Thus at the summary judgment stage, a reasonable jury could find that Defendant had to provide Plaintiff with the opportunity to cure.

*Douglas* burden-shifting framework, used in various other employment discrimination contexts, to both NJ FLA and FMLA retaliation claims.  *Dieng v. Computer Sci. Corp.*, No. 14-5381, 2016 WL 885389, at *10 (D.N.J. Mar. 8, 2016); *Parker,* 234 F.Supp.2d at 488 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800-06 (1973)).  The Supreme Court has summarized the framework as follows:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases.  Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez,* 540 U.S. 44, 50 (2003) (citations omitted).

### 1. STEP ONE

Under this framework, the Court's first step is to analyze whether Plaintiff has established a prima facie case of unlawful retaliation.  *Raytheon Co. v. Hernandez,* 540 U.S. at 50 (citations omitted).  To do so, a plaintiff must show that: (1) she invoked her right to leave under both the FMLA and NJ FLA, (2) she suffered an adverse employment action, and (3) the adverse action was casually related to the plaintiff's exercise of her rights under both the FMLA and NJ FLA.  *Dieng*, 2016 WL 885389, at *10; *Hansler*, 798 F.3d at 158-59; *Erdman*, 582 F. 3d at 508-09.  Defendant does not contest that Plaintiff easily shows the second element, an adverse employment action, because she was terminated.  But, Defendant contests the first and third factors.

Under the first factor, the Court finds that Plaintiff has submitted sufficient evidence that she invoked her rights under both the FMLA and NJ FLA to raise a contested issue of fact for the jury.  Under the FMLA, Defendant does not dispute that Plaintiff took leave between April 5,

2013 through June 28, 2013 and that Defendant granted her an additional four weeks of leave.

Thus, a jury could easily find that Plaintiff makes a prima facie showing of the first factor under

her FMLA retaliation claim.  Under the NJ FLA, a jury could also find that Plaintiff invoked her

rights when she notified Defendant that she was caring for her adult son who had a serious

medical condition. *See D'Alia*, 260 N.J. Super. at 9-10 (holding that "[t]he Act does not require

employees to have an encyclopedic knowledge of their legal rights in order to invoke the benefits

of family leave and job protection" and "there are no magic words that must be used" in a

request for NJ FLA leave; if an employee "reasonably apprise[s]" the employer that he needs to

take leave to care for a serious health condition of a family member, the employer must grant all

the rights accorded). *See also Erdman*, 582 F. 3d at 508-09 (holding that in presenting a

retaliation claim under the FMLA, a plaintiff must only show that she invoked her rights, not that

she actually commenced leave).  There is evidence that Plaintiff reasonably apprised Defendant

of her need to take off to care for her son in both her August 2, 2013 voicemail and her August 5,

2013 email.  Thus, a reasonable jury could conclude that Plaintiff makes a sufficient prima facie

showing of the first factor – that Plaintiff invoked her rights.

Plaintiff also provides enough evidence to raise a contested issue of fact for the jury as to

the third prima facie element: a causal connection between her leave and termination.

"Establishing a causal relationship between an employee's decision to take FMLA leave and an

adverse employment event requires the employee to raise an inference of retaliatory intent on the

employer's part.  Retaliation need not be the sole reason motivating the adverse employment

decision; rather, it will suffice for the plaintiff to show that the retaliatory animus was 'a

determinative factor,' *i.e.,* that 'the action would not have been taken but for [the] protected

activity.'" *Apatoff v. Munich Re Am. Servs.*, 2014 U.S. Dist. LEXIS 106665, at *28-29 (D.N.J.

Aug. 1, 2014) (citing *Culler v. Shinseki*, 840 F. Supp. 2d 838, 846 (M.D. Pa. 2011) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007)).   One way to show a causal connection between the leave request and the adverse employment action is by showing that there is "unusually suggestive" timing that "create[s] an inference of causality". *Apatoff*, 2014 U.S. Dist. LEXIS 106665, at *28-29 (citing *LeBoon*, 503 F.3d at 232 (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).   The Third Circuit has also held that "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference [of a causal connection]."  *Kachmar v. Sungard Data Sys.*, 109 F. 3d 173, 177 (3d Cir. 1997) (citing *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993).  "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."  *Id.*

Plaintiff has demonstrated enough evidence, when looked at as a whole, that a jury could reasonably find that Plaintiff was terminated for taking both her FMLA leave and NJ FLA leave. First, Plaintiff presents evidence from which a trier of fact could infer that Defendant showed hostility toward Plaintiff for taking FMLA leave from the outset.  One example of this occurred after Plaintiff sent Lisa Mascaro faxes on April 11th and 23rd with doctors' notes and emergency room paperwork and indicated that she was submitting these documents until she could get more documents filled out at her next doctor's appointment.  (Rosen Cert. Ex. 12, 14).  Ms. Mascaro did not wait for Plaintiff's next appointment but sent a letter with the subject line "RE: Unscheduled and unjustified absences" on April 24, 2013.  (Wall Cert. Ex. 8).  From the subject line itself, a jury could infer that Ms. Mascaro believed Plaintiff's absence for her shoulder injury was "unjustified."  The language of the rest of the letter also constitutes evidence demonstrating frustration.  For example, the letter includes sentences such as: "The company has

accommodated your absences from April 1, 2013 thru [sic] the present.  Due to the needs of the
business your work will need to be distributed accordingly per company discretion." (Wall Cert.
Ex. 8).  Thus, the evidence can be viewed as showing that Plaintiff's FMLA absence was causing
frustration to the company and that Defendant was developing antagonism toward Plaintiff.

      Additionally, Plaintiff presents evidence from which a jury could infer that Defendant
conflated Plaintiff's FMLA leave for her personal shoulder injury with her NJ FLA leave to care
for her son and that Defendant terminated her because of frustration over her two long
consecutive absences.  The first example in which a jury could find that the company conflated
Plaintiff's leaves appears in Juan Egas's deposition as the corporate representative.  There, he
stated that the company did not provide new forms for Plaintiff when she requested her leave to
care for her son because "Ms. Dingle was on medical leave altogether.  So if we see this as one
single process, there's really no designation, . . . we comply with the procedure, because we sent
this at the beginning of the process, at the beginning of her medical leave."  (Egas Dep. 84:20-
86:16).  This statement may be viewed as showing that the company confused the two leaves,
one based on the FMLA and the other on the NJ FLA, as "one single process".  A trier of fact
could also infer that Defendant conflated Plaintiff's leaves based on the three letters that
Defendant sent to Plaintiff after Plaintiff requested leave to care for her son because each letter
was entitled "Continued Leave of Absence".  (Wall Cert. Ex. 12; Rosen Cert. Ex. 24; Wall Cert.
Ex. 16).  Defendant argues that Plaintiff cannot show temporal proximity between her
termination and her FMLA leave because she was not fired until three months after her FMLA
leave ended, but a jury could find from these examples that Defendant saw her absences as one
continuous leave that included both her FMLA and NJ FLA leave.

Egas's testimony also can be viewed by a trier of fact as evidence of developing antagonism toward Plaintiff for taking consecutive leaves.  In his deposition, he stated: "[W]e granted her with leave and her extended leave started to pose some hardship for the company.  So we needed to restructure the department as a consequence of her absence and other people were receiving, you know, they were picking up the slack of the work. . . . [H]er responsibilities were distributed amongst other team members creating unnecessary work for the other people."  (Egas Dep. 68:24-69:15; 92:8-94:12).  Similarly, Lisa Mascaro in her deposition noted: "I can't speak for the branch but I'm sure that is a hardship for the branch because they have to distribute the work to other employees which then they become disgruntled that they have to take on additional responsibilities, and at the end of the day it's the business and the branch that's suffering."  (Mascaro Dep. 114:14-20).  Based on these statements, a trier of fact could infer that Defendant developed antagonism toward Plaintiff because of her lengthy absence, which included both her FMLA leave and her NJ FLA leave.  Thus, when the Court looks at Plaintiff's evidence as a whole, as it must, Plaintiff adequately establishes a triable issue on causation.  In sum the Court finds that Plaintiff has submitted evidence from which a reasonable jury could find that Plaintiff 1) invoked her rights under the FMLA and NJ FLA, 2) was adversely affected by an employment decision, and 3) that there was a causal connection between the FMLA leave and her termination, and the NJ FLA leave request and her termination.

## 2.   STEP TWO

After Plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action."  *Raytheon Co. v. Hernandez,* 540 U.S. 44, 50 (2003) (citations omitted).  The employer's burden of production at this step in the analysis is a light one.  *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d

Cir. 1994). "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.*  Here, Defendant has articulated a legitimate reason for having fired Plaintiff— she never submitted substantiating documentation as to her NJ FLA leave—and have indeed come forward with evidence including letters and communications in support of Defendant's decision to terminate Plaintiff on that basis.  Their minimal burden of production has been met.

### 3. STEP THREE

Thus, the Court turns back to Plaintiff, who continues to bear the burden of persuasion on the retaliation claim and must now offer evidence demonstrating that the articulated reason is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–143 (2000).  To defeat summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes,* 32 F.3d at 764.

To rebut Defendant's position that Plaintiff's termination was based on her failure to provide a complete certification, Plaintiff points to evidence that Defendant did not provide her with the certification form it was requesting until September 24, 2013, and never gave her the opportunity to cure the certification form.  From this, a jury could infer that Defendant may not have wanted Plaintiff to produce a completed certification form.  To bolster this inference, Plaintiff submits evidence supporting her contention that Defendant gave her difficulty in taking

FMLA leave from the outset, never told Plaintiff about her NJ FLA rights, and did not respond to Plaintiff's request to come back to work.  In addition, Plaintiff brings evidence that Defendant may have been motivated to terminate Plaintiff because her absences were causing frustration to the company.  Plaintiff points to Mr. Egas's words that Plaintiff's leaves were "creating unnecessary work" and Ms. Mascaro's words that her leaves caused employees to be "disgruntled" and caused the branch to suffer.  Thus, a reasonable trier of fact could infer that Defendant developed antagonism toward Plaintiff.  *See Apatoff*, 2014 U.S. Dist. LEXIS 106665, at *34-37 (holding that if a jury could reasonably conclude the employer showed antagonism and was "happy to terminate Plaintiff because her FMLA leave was inconvenient for them", then there is a genuine issue of material fact as to whether to believe the employer's alleged legitimate reason for terminating the employee).  In sum, whether Plaintiff's termination was retaliatory or, rather, based on legitimate nondiscriminatory reasons is a triable issue of fact.  Accordingly, Defendant's motion for summary judgment as to the NJ FLA and FMLA retaliation claims will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion for summary judgment.  An appropriate Order will be filed herewith.

        s/ Stanley R. Chesler
        STANLEY R. CHESLER
        United States District Judge

Dated:  March 7, 2017